# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

G. GREG VALDEZ,

    Plaintiff,

vs.                                                                       CIV. No. 02-94 JC/JHG

THIRD JUDICIAL DISTRICT ATTORNEY
SUSANA MARTINEZ, individually and in
her official capacity, et. al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' motions to dismiss. The motions to dismiss include: (1) Defendant City of Las Cruces' Motion to Dismiss, filed January 24, 2002 (*Doc. 4*); (2) Defendant Doña Ana County's Motion to Dismiss, filed January 30, 2002 (*Doc. 16*); (3) Motion to Dismiss on Behalf of Defendants Third Judicial District Attorney's Office and Third Judicial District Attorney Susana Martinez, Individually and in her Official Capacity, filed February 22, 2002 (*Doc. 13*); (4) Defendant Third Judicial District Attorney's Office and District Attorney Susana Martinez' Motion to Dismiss, filed March 21, 2002 (*Doc. 21)*; (5) Defendant Third Judicial District Attorney's Office and District Attorney Susana Martinez' Motion to Dismiss Second Amended Complaint, filed June 26, 2002 (*Doc. 43)*; (6) Defendants County of Doña Ana, Doña Ana County Sheriff's Department and Doña Ana County Sheriff Juan Hernandez' Motion to Dismiss Plaintiff's Second Amended Complaint and

Memorandum in Support Thereof, filed July 23, 2002 (*Doc.48*); and (7) Defendant City of Las Cruces and Bill Baker, Chief of Police of the City of Las Cruces, Motion to Dismiss Second Amended Complaint for Violations of Plaintiff's Civil Rights Under 42 U.S.C. [sic] 1983, Tortious Interference with Contractual Relations, Malicious Prosecution, Retaliation, Civil Conspiracy, Slander, Libel and Defamation, filed June 3, 2002 (*Doc. 39*). The Court denies Defendant City of Las Cruces' motion (*Doc. 4*), Defendant Doña Ana County's motion (*Doc. 16*), and Defendant Third Judicial District Attorney's Office and District Attorney Susana Martinez' motions *(Docs. 13 and 21)* as moot. Having reviewed the other motions, memoranda and all relevant authority, the Court finds these motions (*Docs. 39, 43 and 48*) well taken, and they are granted in whole.

   I.    **Background**

Plaintiff Greg Valdez, a former district attorney for the Third Judicial District, brings this suit alleging various federal and state law claims against multiple individual and municipal defendants. Plaintiff's Second Amended Complaint centers around events occurring after his tenure as district attorney yet has origins stemming from his time in office. Defendant Martinez and Plaintiff have a long and tumultuous rivalry, which exploded into a firestorm of accusations and law suits by both sides.

In the present action, Plaintiff alleges that Defendants, directed by Defendant Martinez, initiated an investigation of Plaintiff's friends, Mike O. Gonzales and Mike O. Gonzales, Jr. (the "Gonzaleses"), whereby police informants offered to sell (and apparently did sell) two television sets, which were described as "stolen." In January 1999, Plaintiff wished to throw a Super Bowl party and asked the Gonzaleses where he could rent a

television. The Gonzaleses suggested Plaintiff borrow one of their recently acquired televisions. Upon agreement, the Gonzaleses directed the police informants to deliver a television set to Plaintiff's home, which they did.

On October 17, 1999, the Gonzaleses were arrested. Hearing of the arrests, Plaintiff went to the police station to provide legal assistance to the Gonzaleses.[1] Pursuant to an order by State Magistrate Judge Conrad Perea, Officer Joel Cano (not a defendant) and Defendant Sheriff Juan Hernandez informed Plaintiff that he had been charged with a crime and therefore could not speak with the Gonzaleses. After the officers refused to allow Plaintiff to speak with the Gonzaleses, Plaintiff phoned a state district court judge who said that she would not release the Gonzaleses to him but she may direct the Sheriff to allow him to speak with the arrestees. The judge, however, never spoke with the Sheriff.

While Plaintiff was contacting the judge, the Gonzaleses were transported to another jail approximately sixty miles away. Plaintiff asserts that later that evening he received a telephone call from an unidentified male who said that during the episode at the jail, Defendant Martinez and others had been in a back room and that they were responsible for preventing Plaintiff from speaking with the Gonzaleses.

On the day of the arrests, Defendant Martinez held a press conference at which she responded, "I haven't decided yet," to the question of whether Plaintiff would be criminally indicted. Subsequent to the press conference, Defendant Martinez allegedly spoke with a newspaper reporter and told her that Plaintiff was accused of the crime of knowingly

---

[1] Plaintiff's facts do not indicate that the Gonzaleses requested Plaintiff's presence at the police station. Plaintiff simply claims that due to his previous representation of the Gonzaleses in other matters, he assumed he would represent them concerning the stolen televisions.

receiving stolen property. Plaintiff, however, was never indicted nor is there any indication that an article appeared accusing Plaintiff of a crime.

Plaintiff brings this suit alleging violations of his civil rights under 42 U.S.C.§ 1983; interference with contractual relations; retaliation, malicious prosecution and abuse of process; civil conspiracy; and libel, slander and defamation.

## II.     Standard of Review

The court will not grant a dismissal "unless it appears beyond doubt that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Heaney v. United States Veterans Admin.*, 756 F.2d 1215, 1217 (5th Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45 (1957)). However, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." 3 Wright & Miller, Federal Practice and Procedure: Civil 2d § 1216 at 156-159 (footnote omitted). "[A] statement of facts that merely creates a suspicion that the pleader might have a right of action" is insufficient. *Id.* at 163 (footnote omitted). "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief...." 2A Moore's Federal Practice ¶ 12.07 [2.-5] at 12-91 (footnote omitted). The court is not required to "conjure up unpled allegations or construe elaborately arcane scripts" to save a complaint. *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988). Further, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993).

### III. Discussion

#### *a. Absolute Immunity*

Defendant Susana Martinez contends that this Court should afford her absolute immunity, as her actions concerning Plaintiff were prosecutorial in nature. "The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). In the precedential case of *Imbler v. Pachtman*, the Supreme Court ruled that a state prosecutor is "immune from a civil suit for damages under § 1983" for initiating the prosecution of a criminal case. 424 U.S. 409, 431 (1976). In reaching its conclusion, the Court reviewed two historic common law cases. In *Griffith v. Slinkard*, 146 Ind. 177, 44 N.E. 1001 (1896), plaintiff's complaint charged that the prosecutor, without probable cause, included his name in a grand jury true bill after jurors had determined not to indict him. This action resulted in his arrest and forced him to appear in court before the charge was nolle prossed. The Indiana court found that defendant had absolute immunity from suit despite plaintiff's allegation of malice. *Imbler*, 424 U.S. at 421 (citation omitted). The second case the *Imbler* Court reviewed was *Yaselli v. Goff*, 275 U.S. 503 (1927). In that case, the Supreme Court upheld the lower court's determination that a Special Assistant to the Attorney General of the United States should be granted absolute immunity from charges of maliciously and without probable cause obtaining a grand jury indictment upon the purposeful introduction of false and misleading evidence. *Id.* at 422. Both cases grounded their determinations upon public policy concerns including harassment by unfounded litigation and the fear that prosecutors would not actively seek convictions due

to the possibility that they would be made the subject of suits by persons whom they failed to convict. *Id.* at 423. The *Imbler* Court held that these same public policy considerations under the common law weigh in favor of granting prosecutors absolute immunity for their prosecutorial functions under § 1983. *Id.* at 424.

In *Burns v. Reed*, the Court ruled that administrative and investigative actions by a prosecutor do not fall under the ambit of absolute immunity, as they are not "intimately associated with the judicial phase of the criminal process." 500 U.S. 478, 494-96 (1991). Specifically, the Court held that a prosecutor's participation in a probable cause hearing is "intimately associated with the judicial phase of the criminal process," even if such participation included eliciting false or defamatory testimony from witnesses or making false or defamatory statements during, or in conjunction with, the judicial proceedings. *Id.* at 489-92. Yet, a prosecutor could not be afforded this immunity for giving legal advice to police, as such advise does not relate to a prosecutor's preparation for the initiation of a prosecution or for criminal proceedings. *Id.* at 493.

The Supreme Court further elaborated on the differences between administrative and investigative actions versus prosecutorial actions. "There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial…and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested…." *Buckley*, 509 U.S. at 273. If the court determines that the prosecutor was acting as an administrator or as an investigator he may only seek the protections of qualified immunity. *Id.*

The question is thus whether Defendant Susana Martinez was acting in her

capacity as a prosecutor during the actions at issue or whether she stepped out of that role and into the role of administrator or investigator. In the present case, Plaintiff alleges several acts that he contends fall outside Defendant Martinez' prosecutorial role. Plaintiff claims that Defendants, including Martinez, conspired to plant stolen televisions in his friends', the Gonzales', home, and when the Gonzaleses offered Plaintiff the use of one, the informants themselves entered Plaintiff's home to deliver the television. Upon the Gonzaleses arrest in October 1999, Plaintiff, without the Gonzales' consent, went to the police station to speak with them. Yet, Sheriff Hernandez and Officer Cano refused his request, stating that Plaintiff had been charged with a crime and named in the complaint, and that Magistrate Judge Conrad Perea ordered that Plaintiff could not speak with the Gonzaleses. Before Plaintiff could seek the higher authority of a state district judge, the Gonzaleses were transported to the Deming jail, sixty miles away. Plaintiff further claims that an unidentified male called and informed him that Defendant Martinez had been in the back room during the incident controlling the situation. Plaintiff admits that he never was charged with a crime, and that upon reviewing for himself the criminal complaint, it did not name him as a defendant but only stated that he had received a stolen television. In reviewing these facts liberally, there is nothing to indicate that Defendant Martinez stepped outside her role as prosecutor.

   Plaintiff attempts to allege in his complaint that Defendant Martinez' actions fall under investigative activities. Yet, the facts show neither investigative, administrative nor even direct prosecutorial actions against Plaintiff. If the allegations are correct that Defendants, including Martinez, falsely planted stolen televisions in the Gonzaleses'

premises, Plaintiff himself has no cause of action, as he lacks standing. Moreover, the informants who entered Plaintiff's home to deliver the television did so, not upon their own actions, but due to the separate agreement between Plaintiff and the Gonzaleses, whereby the Gonzaleses directed the informants to deliver the television. Finally, as courts have reiterated, simply naming a person in an indictment, even maliciously, does not deflect a prosecutor's claim of absolute immunity. *Imbler,* 424 U.S. at 422 (citing *Goff*, 275 U.S. at \_\_\_\_); *Kulwicki v. Dawson* 969 F.2d 1454, 1464 (3rd Cir. 1992) (prosecutor's personal animus against a defendant does not negate absolute immunity when initiating a complaint even where the charges are groundless). Yet, in this case, Defendant Martinez never even named Plaintiff in the indictment.

Plaintiff's only colorable claim is that Defendant Martinez initiated an investigation of Plaintiff prior to any reasonable suspicion to believe that he had engaged in criminal activity. As Plaintiff, admits, however, Defendant Martinez never named him as a defendant in the indictment but merely as a witness. The Court can find no authority for the illogical proposition that absolute immunity is waived when a prosecutor allegedly initiates an investigation against a third party that results in a person merely being named as a witness in the criminal indictment. Defendant Martinez in her individual capacity is thus cloaked under the aegis of absolute immunity regarding Plaintiff's § 1983 claims including Count I (civil rights violations) and all other federal claims including Count III (Retaliation, Malicious Prosecution and Abuse of Process) and Count IV (Civil

Conspiracy).[2]

### b. *Qualified Immunity*

#### <u>Defamation</u>

Unlike prosecutorial conduct, a district attorney is only entitled to qualified immunity for statements made at a press conference. *Joseph v. Yocum*, 2002 WL 31656696, at *3 (10th Cir. Nov. 26, 2002) (citing *Buckley*, 509 U.S. at 277-78). "Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor." *Buckley*, 509 U.S. at 277. Under a qualified immunity analysis, a prosecutor is immune if the plaintiff fails to meet a two-part test. The court first determines "whether the plaintiff has asserted a violation of a constitutional or statutory right." *Roska ex rel. Roska, v. Peterson*, 328 F.3d 1230, 1239 (10th Cir. 2003) (quoting *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir.1996)). If the plaintiff meets this burden, the court next asks "whether that right was clearly established such that a reasonable person in the defendant's position would have known that [his] conduct violated that right." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998).

In the present case, Defendant Martinez claims qualified immunity for various written and oral statements. The alleged defamatory statements are: (1) Defendant's inclusion of Plaintiff in the indictment as a person who received a "stolen" television; (2)

---

[2] Plaintiff fails to properly allege under which federal statute(s) he is bringing his claims. Moreover, Plaintiff does not demarcate whether the claims are federal or state. As such, the Court *sua sponte* has determined that Plaintiff brings under § 1983 Count III (retaliation) and Count IV (civil conspiracy). But the remainder of Count III (malicious prosecution and abuse of process) are state law claims.

an alleged statement to a newspaper reporter that Plaintiff was accused of the crime of knowingly receiving stolen property; and (3) the response, "I haven't decided yet" at a press conference when a reporter asked Defendant Martinez whether she was going to indict Plaintiff. Addressing the statements in reverse order, the Court finds that they are not defamatory, neither as individual statements nor as a whole.

Plaintiff alleges that Defendant's response, "I haven't decided yet," is defamatory, as it was made maliciously and with the intent to harm Plaintiff's standing in the community. Plaintiff asserts that this statement, in conjunction with the other statements, damaged his reputation and resulted in a loss of business and political opportunities. This allegation, however, fails to state a constitutional violation. To successfully assert a constitutional defamation claim, a plaintiff must allege that a defendant's actions deprived him of a liberty interest without due process of law. "The liberty interest that due process protects includes the individual's freedom to earn a living." *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1153 (10th Cir. 2001) (citation omitted). A defamatory statement alone, however, is not sufficient to establish a loss of liberty interest claim. *Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 726-27 (10th Cir. 2000). A plaintiff must assert that his reputation was damaged "in connection with [an] adverse action taken against [him]." *Stidham*, 265 F.3d at 1153 (citing *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir. 1989)).

To determine whether statements infringe upon "a liberty interest in [one's] good name and reputation as it affects [one's] property interest in continued employment," *Stidham*, 265 F.3d at 1153 (quoting *Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir.

1994)), the Tenth Circuit has adopted a four-part test. Under the *Workman* test, the statements must: (1) impugn the good name, reputation, honor, or integrity of the employee; (2) be false; (3) occur in the course of terminating the employee or must foreclose other employment opportunities; and (4) be published. *Workman,* 32 F.3d at 481. Plaintiff must meet all four elements conjunctively. *Renaud*, 203 F.3d at 727. (citation omitted).

Plaintiff's complaint clearly alleges that his reputation was damaged due to Defendant Martinez' statements and that the statements were false, thus meeting the first and second elements of the *Workman* test. Plaintiff, however, does not meet the third element of the test, as he was not an employee who had been terminated by any of the Defendants. The third *Workman* element makes it clear that a successful plaintiff must have been an employee of a § 1983 defendant and "the statements must occur in the course of terminating the employee or must foreclose other employment opportunities." *Workman,* 32 F.3d at 481. Although the latter clause could be interpreted as allowing actions by other aggrieved persons, Supreme Court and Tenth Circuit precedent holds that "foreclos[ure] [of] other employment opportunities" relates to the circumstances of the alleged defamatory statement and the termination. Specifically, the termination must be incident to the defamation, *Stidham*, 265 F.3d at 1154 (citing *Siegert v. Gilley*, 500 U.S. 226, 234 (1991)), such that a plaintiff must allege that the defamatory statement concerned "the manner or reasons for his termination." *Renaud*, 203 F.3d at 728. In the present case, Plaintiff is a private attorney claiming that a statement made at a press conference caused him the loss of future employment opportunities. This allegation clearly

-11-

does not meet the third prong of the *Workman* test. The Court thus finds that Plaintiff fails to allege a constitutional defamation claim. Because Plaintiff has failed to allege a constitutional claim, Defendant Martinez is entitled to qualified immunity for her statement at the press conference.

Plaintiff's next defamation claim regards comments allegedly made to a newspaper reporter, which the reporter never published. Due to Plaintiff's tenure as the District Attorney, he is a public official for purposes of defamation. *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 154 (1967) (plaintiffs who "commanded a substantial amount of independent public interest at the time of publication" were deemed public figures under defamation law). To be actionable, a plaintiff must allege that the defendant "had published damaging falsehoods with 'actual malice.'" *Herbert v. Lando*, 441 U.S. 153, 156 (1979). In the present case, there are no allegations that the reporter (who is not a defendant) published any statements made to her by Defendant Martinez. The Court therefore finds that Defendant Martinez is entitled to qualified immunity for any statements she made to the reporter.

Plaintiff's final defamation claim relates to his inclusion in the indictment against the Gonzaleses. This claim also fails for, "[a] prosecutor is absolutely immune when making [the decision to prosecute], even where he acts without a good faith belief that any wrongdoing has occurred. (citation omitted). Harm to a falsely-charged defendant is remedied by safeguards built into the judicial system...." *Kulwicki v. Dawson*, 969 F.2d 1454, 1464 (3d Cir.1992). Yet, as discussed previously, Plaintiff cannot even claim that he was falsely charged (much less maliciously prosecuted), for he was only named in the

-12-

indictment as a person who had received one of the "stolen" televisions. It is irrelevant, therefore, that Plaintiff claims that Defendant included him in the indictment solely for malicious and injurious purposes. Pursuant to the *Workman* test, Plaintiff's allegations of defamation fail.

### *c.     Municipal Liability*

#### *District Attorney's Office*

A § 1983 action against a municipality and an officer in her official capacity are the same. *Myers v. Okla. County Bd. Commrs,* 151 F.3d 1313, 1316 n.2 (10th Cir. 1998) (quoting *Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir. 1988)). This opinion thus refers to the suit against Defendant Martinez in her official capacity and the suit against the District Attorney's Office as the "suit against the District Attorney's Office."

Section 1983 plaintiffs asserting claims against a municipality for constitutional violations by one of its employees must allege: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers*, 151 F.3d at 1316. As courts have recognized, a suit against a municipality cannot withstand a motion to dismiss unless the plaintiff has sufficiently alleged a constitutional violation. *Id.* (citations omitted). In the present case, Plaintiff's federal claims fail to allege any proper constitutional violations.

#### Count I (violations of Plaintiff's civil rights)

Under Count I, Plaintiff attempts to allege various constitutional violations including: (1) the right to be secure in his own home and to be free from unreasonable searches and seizures; (2) the right of liberty to contract; (3) the right to due process for a

constitutionally protected property right (contracts); (4) the right to assemble and participate in government and politics; and (5) other related rights. Plaintiff also claims his substantive due process rights were violated through the official policies of the Defendants.

First, as discussed previously, Plaintiff neither has standing nor states a Fourth Amendment search and seizure claim. Second, Plaintiff's constitutional contract claim also fails. The United States Constitution makes it unconstitutional for a state to pass any "Law impairing the Obligation of Contracts." U.S. CONST. art. I, § 10. To succeed on a constitutional contract claim, a plaintiff must show that: (1) a contractual relationship existed, (2) the change in law impaired that relationship, and (3) the impairment was substantial. *Renaud,* 203 F.3d at 728. Even assuming Plaintiff had an implied contract with the Gonzaleses (there is no allegation that the Gonzaleses contacted him upon arrest), his claim fails, for the factual basis behind his grievance is that Sheriff Juan Hernandez and Officer Joel Cano did not allow him to see the Gonzaleses due to an order by State Magistrate Judge Conrad Perea. Plaintiff asserts that in so refusing to allow him any contact with the Gonzaleses, his right to contract has been denied. Because these facts clearly do not allege a change in law Plaintiff's claim must be denied.[3]

Third, Plaintiff's Second Amended Complaint does not support the claim that he was denied the right to assemble and participate in government and politics. Under this

---

[3] Plaintiff's Count II is entitled "Interference with Contractual Relations," and seems duplicative of his contract claim in Count I. Although Count II further enumerates on his contract claim in Count I, there are no facts properly alleging that the state implemented a law that interfered with his right to contract. The Court's analysis under Count I therefore will assume the allegation in Count II.

claim, he seems to assert that because Defendants did not allow him to see the Gonzaleses, this right was infringed. The Supreme Court has demarcated three separate aspects of the right to associate. They are: (1) the right to associate for economic goals, *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93-94 (1945); (2) the right to associate as protected by the concept of liberty in the due process clauses and as an implicit part of the Bill of Rights Guarantees, *Loving v. Virginia*, 388 U.S. 1, 12 (1967); and (3) the right to associate for the purpose of engaging in types of activities expressly protected by the First Amendment. *Cornerstone Bible Church v. City of Hastings,* 740 F.Supp 654, 663 (D. Minn.1990) (citing 3 R. Rotunda, J. Nowak, & J. Young, Treatise on Constitutional Law Substance and Procedure, § 20.41 (1986)). The Court is unaware of any case law suggesting that Defendants' denial of his request to see the Gonzaleses implicates any of these aspects of the right to associate.

Finally, Plaintiff summarily alleges that Defendants have denied him other related rights. Without further elaboration, the Court is unable to discern which rights Defendants allegedly have violated.

<u>Count III: Retaliation</u>

Although Plaintiff's Count III does not point to any specific actions by Defendants, the Court construes his allegation of retaliation to include the refusal by the Defendants to allow Plaintiff to see the Gonzaleses. Plaintiff seems to allege that this denial was due to his and Defendant Martinez' antagonistic history. These facts, however, do not establish a First Amendment retaliation claim under the standard set out in *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). Under *Worrell*, a plaintiff must allege:

> (1) that he was engaged in constitutionally protected speech; (2) that the
> defendants' actions caused the plaintiff "to suffer an injury that would chill
> a person of ordinary firmness from continuing to engage in that activity;"
> and (3) that the "defendants' adverse action was substantially motivated as
> a response to the plaintiff's exercise of constitutionally protected conduct.

*Id.* at 1212.

Plaintiff's Second Amended Complaint alleges that Defendants' conduct was "designed to retaliate against and chill the political expression of the Plaintiff." Comp. at 15. Under the *Worrell* standard, however, Plaintiff fails to support this assertion with any facts suggesting that he was engaged in a constitutionally protected activity. Moreover, Plaintiff's retaliation claim must be dismissed, as it fails to allege that the Defendants' activities would have chilled a person of ordinary firmness from exercising his First Amendment rights. The Second Amended Complaint only alleges that Defendants denied Plaintiff's request to see the Gonzaleses pursuant to an order by a state magistrate judge. The Second Amended Complaint does not allege that Defendants attempted to interfere with Plaintiff's ability to speak freely, or that he refrained from engaging in protected speech after this incident. Plaintiff's retaliation claim is thus dismissed.

### Count IV: Civil Conspiracy

Concerning Plaintiff's civil conspiracy claim, this too fails as a matter of law. Relief can only be granted on conspiracy claims under § 1983 if the object of the conspiracy was to deny Plaintiff a federally protected right. *Singer v. Wadman*, 745 F.2d 606, 609 (10th Cir. 1984). Defendants "may not be held liable under [§ 1983] . . . if there are no underlying constitutional violations." *Thompson v. City of Lawrence, Kan.*, 58 F.3d 1511, 1517 (10th Cir. 1995) (citing *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir.1993)). In the present case, Plaintiff's Second Amended Complaint cites a litany of

grievances. Yet, none rises to the level of a constitutional deprivation.

### *Plaintiff's state law claims*

The Court construes Plaintiff's Second Amended Complaint to include the state law claims of interference with contractual relations under the New Mexico Constitution, civil conspiracy, malicious prosecution and abuse of process. Under 28 U.S.C. § 1367, a federal court may exercise supplemental jurisdiction over a plaintiff's state claims if the court has federal question jurisdiction, but if the court dismisses all federal question claims it may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). Upon dismissing Plaintiff's federal claims, this Court declines to exercise supplemental jurisdiction and therefore dismisses Plaintiff's state law claims without prejudice.

### IV.    **Conclusion**

Due to Plaintiff's failure to state a claim for which relief might be granted, this Court dismisses Plaintiff's federal claims against Defendants Third Judicial District Attorney's Office, Susana Martinez, City of Las Cruces[4], Bill Baker, County of Doña Ana, Doña Ana County Sheriff's Department, and Sheriff Juan Hernandez.

Wherefore,

IT IS ORDERED that Defendant City of Las Cruces' Motion to Dismiss, filed January, 24, 2002 (*Doc. 4*) is DENIED as MOOT;

IT IS ORDERED that Defendant Doña Ana County's Motion to Dismiss, filed January 30, 2002 (*Doc. 16*) is DENIED as MOOT;

---

[4]Police departments may not be sued under § 1983, as they are not legal entities apart from the municipality. *Ketchum v. Albuquerque Police Dept.*, 1992 WL 51481 (10th Cir. 1992)(unpublished disposition citing *Martinez v. Winner*, 771 F.2d 424, 443 (10th Cir. 1985)).

IT IS ORDERED that Defendants Motion to Dismiss on Behalf of Defendants Third Judicial District Attorney's Office and Third Judicial District Attorney Susana Martinez, Individually and in Her Official Capacity, filed February 22, 2002 (*Doc. 13*) is DENIED as MOOT;

IT IS ORDERED that Defendant Third Judicial District Attorney's Office and District Attorney Susana Martinez' Motion to Dismiss, filed March 21, 2002 *(Doc. 21)*, is DENIED as MOOT;

IT IS ORDERED that Defenant Third Judicial District Attorney's Office and District Attorney Susana Martinez' Motion to Dismiss Second Amended Complaint, filed June 26, 2002 *(Doc. 43)* is GRANTED;

IT IS ORDERED that Defendants County of Doña Ana, Doña Ana County Sheriff's Department and Doña Ana County Sheriff Juan Hernandez' Motion to Dismiss Plaintiff's Second Amended Complaint and Memorandum in Support Thereof, filed July 23, 2002 (*Doc.48*) is GRANTED;

IT IS ORDERED that Defendant City of Las Cruces and Bill Baker, Chief of Police of the City of Las Cruces, Motion to Dismiss Second Amended Complaint for Violations of Plaintiff's Civil Rights Under 42 U.S.C. [sic] 1983, Tortious Interference with Contractual Relations, Malicious Prosecution, Retaliation, Civil Conspiracy, Slander,

Libel and Defamation, filed June 3, 2002 (*Doc. 39*) is GRANTED.

      DATED July 30, 2003.

                                          _____
                                          SENIOR UNITED STATES DISTRICT JUDGE